UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| TERRY L. MAPLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:12-CV-558 |
| | ) | (VARLAN/SHIRLEY) |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 18, 19] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 20, 21]. Plaintiff Terry L. Maples seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

The Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income under the Social Security Act on October 4, 2009, alleging disability since December 31, 2003, due to back problems and a learning disability, including illiteracy. His application was denied initially and upon reconsideration. The Plaintiff then requested a hearing, which was held before ALJ Jack B. Williams, in Knoxville, Tennessee, on May 17, 2011. The Plaintiff was present and testified.

1

During the hearing, the Plaintiff amended his onset date to December 1, 2008. Thereafter, the

ALJ issued an unfavorable decision on June 17, 2011, finding the Plaintiff was not disabled. The

Appeals Council denied the Plaintiff's request for review of that decision; thus, the decision of

the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review

of the Commissioner's decision.

## I.    ALJ FINDINGS

The ALJ made the following findings:

> 1.  The claimant met the insured status requirements of the Social Security Act through December 31, 2008.
>
> 2.  The claimant has not engaged in substantial gainful activity since December 1, 2008, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.  The claimant has the following severe impairments: back pain, morbid obesity, borderline intellectual functioning, and learning disability, not otherwise specified (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can stand and walk a total of four hours per day and sit six hours per day, but will need to alternate between sitting and standing at about thirty minute intervals. He is functioning in the borderline intellectual functioning range as opposed to retarded range and there is a learning disorder for math, reading, and writing. He can recall and perform simple tasks that do not require literacy and can sustain concentration, attention, and pace for simple tasks for a two-hour period. He cannot perform detailed or

2

complex tasks of perform work where speed is an essential component. He can work at an average pace, but not do piece rate work or anything where you had to be very quick. He can interact appropriately with others and adapt to simple routine change.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 8, 1964 and was 44 years old, which is defined as a "younger individual", on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant is "illiterate" and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See Social Security Ruling 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 15-23].


## II.  DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

3

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529.

4

The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v.

5

Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility."  Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner.  See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).  The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses."  Wilson, 378 F.3d at 546-47.  Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard.  See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits.  Boyes v. Sec'y of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

IV.    POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ erred by finding that he did not meet or equal the criteria for Listing 12.05.  [Doc. 19 at 2-6].  In this regard, the Plaintiff raises two specific

6

allegations. First, the Plaintiff asserts that his IQ testing demonstrates that he meets the "paragraph B" criteria of the listing. [Id. at 4-5]. Second, the Plaintiff argues that he also satisfies the "paragraph C" criteria as evinced by the testimony provided by the vocational expert ("VE") during the hearing. [Id. at 5-6].

The Commissioner maintains that the ALJ properly found that the Plaintiff did not meet or equal the criteria set forth in Listing 12.05. [Doc. 21 at 6]. The Commissioner argues that the Plaintiff does not satisfy the "paragraph B" or the "paragraph C" criteria because the Plaintiff's IQ testing on one exam only provided an "estimate" of his mental functioning while the score on another exam was not endorsed in its entirety by the evaluator. [Id. at 7-9]. The Commissioner further maintains that the part of the VE's testimony relied on by the Plaintiff was properly rejected by the ALJ as the testimony related to limitations that were not credible. [Id. at 10-11].

V.    ANALYSIS

Normally, a claimant can establish disability by demonstrating all of the medical findings listed for an impairment. 20 C.F.R. § 404.1525(c)(3). "If a claimant does not have one of the findings, however, [he or] she can present evidence of some medical equivalent to that finding." Bailey v. Comm. Soc. Sec., 413 F. App'x 853, 854 (6th Cir. Mar. 11, 2011) (citing §§ 404.1525 & 404.1526). To demonstrate such a medical equivalent, the claimant must present "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (emphasis in original). The claimant has the burden of establishing that his impairment meets or equals a listed impairment. Walters, 127 F.3d at 529.

In relevant part, Listing 12.05 provides the following:

12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . . .

B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function[.]

20 C.F.R. § 404, Subpart P, App. 1 (12.05). Thus, to meet or equal Listing 12.05, a claimant's impairment must satisfy "the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria." Id. (12.00A) (emphasis added).

The Court will address each of the listing's requirements in turn.

### A. Subaverage Intellectual Functioning

The Plaintiff argues that he meets the listing's diagnostic description because he was enrolled in special education classes while in school. [Doc. 19 at 4]. He points to a consultative psychological evaluation that was conducted by Alice K. Garland, M.S., on March 2, 2010, which documented his reports of attending special education classes while in school. [Id. (citing Tr. 261)]. The Plaintiff also cites to a second psychological evaluation conducted by Michael T. Galloway, M.S., on April 19, 2011, in which the Plaintiff reported that he left high school in the 12th grade, struggled academically, and was in resource classes for a number of years. [Id. (citing Tr. 310)].

8

The Commissioner argues that a history of special education is not consistent with a diagnosis of mental retardation under Listing 12.05 and that Sixth Circuit case law has held special education is insufficient to satisfy the listing's diagnostic description. [Doc. 21 at 9 n.3].

As mentioned above, Listing 12.05 contains a diagnostic description that must be met in addition to one of the listing's paragraph criteria. "[A] claimant must demonstrate three factors to satisfy the diagnostic description: (1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations. Hayes v. Comm'r of Soc. Sec., 357 F. App'x 672, 675 (6th Cir. 2009).

The Court finds that the evidence relied on by the Plaintiff, namely the two psychological evaluations that documented the Plaintiff's subjective allegations, alone, do not demonstrate that the Plaintiff experienced significantly subaverage general intellectual functioning prior to age 22. While the Plaintiff reported and testified that he dropped out of school in the 12th grade, it appears from the record that it was not from experiencing intellectual difficulties but rather by choice in order to work as he was planning to get married and had a child on the way. [Tr. 211, 310]. Although the Plaintiff testified that he was held back once in the 4th grade and took special education classes [Tr. 38-39], our appellate court "has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two." Hayes, 357 F. App'x at 677. Moreover, aside from the Plaintiff's self-report, he does not provide school transcripts or any other documentation that would indicate his academic performance or verify the extent of his learning disability while in school.

Furthermore, the Plaintiff offers little evidence or argument concerning adaptive functioning deficits. Adaptive-skills include social skills, communication skills, and daily-living

9

skills.  Id.  The Sixth Circuit has cited with approval to the American Psychiatrist Association's definition of adaptive-skills limitations as "[c]oncurrent deficits or impairments . . . in at least two of the following areas:  communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety."  Id. (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 49, 4th ed. 2000).  Unfortunately for the Plaintiff, the record is replete with evidence that he has been able to engage in a number of activities which suggests that his mental impairments are not as severe as he alleges.  The ALJ noted throughout his decision that the Plaintiff reported living alone, caring for himself, is capable of driving, can perform some light household chores including preparing simple meals, grocery shopping, and washing dishes, and has continued to work sporadically after his alleged onset date, albeit not to the level of substantial gainful activity.   [Tr. 15, 17, 18].  The Court further observes that for 20 years the Plaintiff has been able to work despite his mental impairments.  [Tr. 153].  The Court is not oblivious to the fact that the Plaintiff does indeed experience some mental limitations, but the record does not support limitations that are more severe than those accounted for by the ALJ.

Based upon the foregoing, the Court finds that the Plaintiff has not satisfied his burden at step three of the sequential evaluation as he is unable to demonstrate the onset of a "significantly subaverage general intellectual function with deficits in adaptive function" prior to age 22. Although the Court's finding precludes the Plaintiff from satisfying Listing 12.05B or 12.05C, the Court will nonetheless address the remaining allegations raised by the Plaintiff.

### B.  "Paragraph B" Criteria

In support of his argument that the medical evidence of record demonstrates that the

10

"paragraph B" criteria has been met, the Plaintiff relies on test scores that he received on several academic achievement and intellectual tests administered by Ms. Garland and Mr. Galloway. [Doc. 19 at 4-5]. The Plaintiff asserts that his test results with Ms. Garland place him in the mildly mentally retarded range and that his IQ score alone on Mr. Galloway's testing specifically places him within the purview of "paragraph B." [Doc. 19 at 4].

During Ms. Garland's evaluation, the Plaintiff was administered the Wechsler Adult Intelligence Scale III test ("WAIS-III") and the Wide Range Achievement Test IV ("WRAT-IV"). [Tr. 261]. On the WAIS-III, the Plaintiff scored a verbal IQ of 66, a performance IQ of 73, and a full scale IQ of 66, which placed him in the mildly mentally retarded range. [Id.]. Ms. Garland opined, however, that the Plaintiff's "adaptive behavior appears to be higher and borderline [intellectual functioning] is probably a more accurate estimation of his ability." [Tr. 262]. On the WRAT-IV, the Plaintiff received a reading standard score of 56 and a math standard score of 63. [Id.]. Ms. Garland characterized the Plaintiff as a "'slow learner' as he has less than average intellectual functioning and lower than grade level reading and math skills." [Id.]. In addition to borderline intellectual functioning, the Plaintiff was diagnosed with a learning disorder, not otherwise specified. [Id.].

Mr. Galloway administered the WRAT-IV and the Slosson Intelligence Test ("SIT-R3") and compared the Plaintiff's test results with Ms. Garland's findings. [Tr. 310-11]. The Plaintiff's WRAT-IV scores indicated that his word reading, sentence comprehension, spelling, math computation, and reading composite score fell in the lower performance level for his age group. [Tr. 310]. Mr. Galloway opined that the results were similar to those achieved on the WRAT-IV administered by Ms. Garland and found the scores to be representative of the Plaintiff's academic ability. [Id.]. On the SIT-R3, the Plaintiff achieved a score of 59. [Tr.

11

311]. Mr. Galloway explained that the SIT-R3 results were an "estimate of [the Plaintiff's] general verbal cognitive ability" as the test had a 95% confidence interval thereby assuring that the Plaintiff's true score fell somewhere between 43 and 65, or in a moderate to mild mentally handicapped range. [Id.]. Mr. Galloway found the results were similar to the Plaintiff's full scale IQ score of 66 achieved on the WAIS-III administered by Ms. Garland and that such score was indicative that the Plaintiff functioned well below average. [Id.].

In the disability determination, the ALJ only considered Listing 12.02, 12.04, and 12.05C. [Tr. 18-19]. The ALJ addressed Ms. Garland's evaluation, adopting her assessment that the Plaintiff was not mentally retarded but rather performed in the range of borderline intellectual functioning. [Tr. 17]. The ALJ also addressed the opinion of a state agency psychologist who opined that the Plaintiff could recall and perform simple tasks that did not require literacy skills, he could sustain concentration and pace for a two hour period but could not perform detailed tasks or tasks requiring literacy skills unless special supervision was provided, he could interact appropriately with others, and he could adapt to simple changes, travel, and recognize hazards.[1] [Id.]. The ALJ briefly addressed Mr. Galloway's evaluation, remarking that "Mr. Galloway affirmed that the results of the claimant's testing and Ms. Garland's intellectual testing would indicate that he functioned well below average." [Id.]. The ALJ continued by discussing the weight he gave to each opinion:

> Although the claimant has been diagnosed with borderline intellectual functioning, no treating sources in the record assigned any specific mental functional limitations to the claimant. The bulk of the data in the files suggests only mild to moderate limitations as the claimant lives alone, interacts with family, drives, watches television, and has earnings at the substantial

[1] The state agency psychologist's mental assessment was affirmed by a second reviewing state agency psychologist on July 7, 2010. [Tr. 17, 293].

gainful activity level in the past. The undersigned does [not] give significant weight to Ms. Garland's or Mr. Galloway's determinations with regard to the claimant's ability to do work related activities. Their conclusions are inconsistent with their evaluations and are not supported by progress notes of record. Further, the undersigned affords little weight to these reports and conclusions because they are not a treating provider. Mr. Galloway and Ms. Garland evaluated the claimant on only one occasion and their conclusions appear to be based on the claimant's subjective complaints. (Exhibits 4F and 14F).

[Tr. 20]. The state agency psychologist's opinion that the Plaintiff had mild to moderate mental limitations was given significant weight by the ALJ who found that said opinion was more consistent with the evidence of record. [Tr. 20-21].

Although Listing 12.05B was not specifically mentioned or addressed in the disability determination, the Court finds that the Plaintiff has failed to satisfy his evidentiary burden in demonstrating that he meets or equals the "paragraph B" criteria for several reasons. First, the Plaintiff relies on his test results with Ms. Garland for the proposition that his score places him in the mildly mentally retarded range. However, Ms. Garland specifically declined to endorse the Plaintiff's score as an indication that he was mildly mentally retarded and instead opined that the Plaintiff was borderline in intellectual functioning. [Tr. 262]. Therefore, Ms. Garland's findings do not support a conclusion that the Plaintiff is mildly mentally retarded.

Second, the only evidence of record that might suggest that the Plaintiff's IQ satisfies the "paragraph B" criteria is the Plaintiff's score of 59 on the SIT-R3 administered by Mr. Galloway. While the Commissioner argues to some length that the SIT-R3 can only act as a screening instrument and cites to the Court a research study indicating that the test does not provide an accurate reflection of an individual's IQ score [Doc. 21-1], the Court need not concern itself with the merits and reliability of the test to the degree that the Commissioner argues. Mr. Galloway

13

himself concedes that the test results were only an "estimate" and that while the Plaintiff scored a 59, the Plaintiff's true score could be as low as 43 and as high as 65. Either way, the Court finds that this standalone test which merely provides an estimated range of intellectual functioning, in and of itself, simply does not satisfy the Plaintiff's burden under the listing. "[T]he mere fact of a qualifying IQ score does not require that the ALJ find mental retardation under Section 12.05B when substantial evidence supports the contrary conclusion or the claimant's allegations of [his or] her capabilities are deemed not credible." Courter v. Comm'r of Soc. Sec., 479 F. App'x 713, 721 (6th Cir. May 7, 2012). As already discussed by the Court, the record contains numerous instances of activities the Plaintiff routinely engaged in which, as the ALJ noted [Tr. 15], reflects adversely on the Plaintiff's credibility.

Finally, the Court observes that aside from the academic achievement and intellectual testing performed by Ms. Garland and Mr. Galloway, there record is void of any medical evidence documenting the existence or severity of the Plaintiff's alleged mental impairments. See Atterberry v. Sec'y of Health and Human Servs, 871 F.2d 567, 571 (6th Cir. 1989) (holding that the absence of psychiatric treatment suggests a mental impairment that is not severe or is not disabling); see also Key v. Callahan, 109 F.3d 270, 274 (6th Cir. 1997) (holding that the failure to seek mental health treatment is significant when assessing the credibility of a plaintiff's allegations). Based upon the foregoing, the Court finds that the ALJ did not error in failing to make any findings regarding Listing 12.05B as the evidence of record simply does not establish that the Plaintiff has a valid verbal, performance, or full scale IQ of 59 or less.

The Plaintiff must not only establish the existence of a medically-diagnose mental impairment, but also must prove its severity and functional impact. Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988). The Plaintiff has failed to make such a showing. Accordingly, the

Court finds that the Plaintiff does not meet or equal Listing 12.05B, and therefore, the Plaintiff's allegation of error in this regard is not well-taken.

### C.     Listing 12.05C

Lastly, the Plaintiff's contends that he meets the "paragraph C" criteria.  [Doc. 19 at 5-6]. To be disabled under "paragraph C," a claimant must meet the following two requirements:  (1) a valid verbal, performance, or full scale IQ score between 60 and 70; and (2) a mental or physical impairment imposing an additional and significant work-related limitation.   The Plaintiff's allegation of error specifically takes issues with the second requirement as he argues that the testimony provided by the VE in response to several hypothetical questions demonstrates that he had a physical impairment that imposed additional and significant work-related limitations. [Id.].

During the hearing, the ALJ posed a hypothetical question to the VE which included all of the limitations accounted for in Finding 5 of the ALJ's decision, see supra 2-3.  In response, the VE testified that while the Plaintiff would be unable to perform any of his past relevant work, he would be capable of performing the job of a hand packer, which had an availability of 2,700 jobs locally and 100,00 jobs nationally, and a production laborer, which had an availability of 6,000 jobs locally and 180,000 jobs nationally.  [Tr. 53].  The VE classified both positions as unskilled light jobs.  [Tr. 53-54].

At step five of the disability determination, the ALJ relied on the aforementioned testimony in concluding that the Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  [Tr. 23].

The Plaintiff appears to argue that other limitations attested to by the VE, which were not

adopted by the ALJ, created additional and significant physical limitations that would satisfy the second prong of the "paragraph C" criteria. Specifically, the VE testified that if an individual needed to take extra breaks beyond the customary breaks given during an eight-hour workday because he had to lie down from anywhere between 30 minutes to an hour on any given day, such an individual would be precluded from performing the jobs of a hand packer and production laborer. [Tr. 55]. In addition, if the individual could only stand or walk for less than two hours total in an eight-hour workday, all work, including sedentary work, would be eliminated. [Tr. 59].

The Commissioner contends, that the ALJ was not obligated to adopt the VE's additional responses because those responses included limitations that the ALJ found were not credible. [Doc. 21 at 10]. The Court agrees.

While a hypothetical question must accurately reflect a plaintiff's physical and mental impairments before the ALJ can rely on the response, "the ALJ is required to incorporate only those limitations that he accepts as credible." Griffeth v. Comm'r of Soc. Sec., 217 F. App'x 425, 429 (6th Cir. Aug. 16, 2007) (citing Casey v. Sec'y of HHS, 987 F.2d 1230, 1235 (6th Cir. 1993)). The Court finds that the need for extra breaks and the ability to stand or walk for less than two hours in an eight-hour workday is not supported by the record. Thus, the Court finds the ALJ was not required to adopt any further limitations beyond those assessed in the Plaintiff's RFC.

The Court has not found, nor has the Plaintiff cited to, a single medical record, opinion, or treatment note that suggests that the Plaintiff would require extra breaks while working or that he would need to lay down anywhere between 30 minutes to an hour on any given day. This limitation appears to be based upon the Plaintiff's subjective allegation that when he experiences

16

a bad day, he will nap for around an hour and a half twice a day. [Tr. 37]. However, treatment notes from the Plaintiff's treating physician Jeff Stevens, M.D., documented that the Plaintiff continued working on a limited bases after his alleged onset date despite his chief physical complaint of back pain. [Tr. 225, 233, 235, 282]. As noted by the ALJ, the Plaintiff's work activities included engaging in manual labor such as working at his family's outdoor market lifting plants and decorations and doing odd jobs during the winter months such as tree trimming. [Tr. 15]. At no time were work limitations ever assessed or recommended by Dr. Stevens. Nor did the Plaintiff report that he needed to take extra breaks or lie down as a result of his back pain. The Court questions how the Plaintiff was able to continue engaging in manual labor which included heavy lifting if his symptoms were as severe as he alleged. The ALJ, however, considered such work activities when he assessed the Plaintiff's credibility, RFC, and symptoms and rightfully so as the ALJ is charged with resolving conflicts in the evidence. Therefore, the Court finds that the ALJ's refusal to adopt a limitation that included the need to take extra breaks during a regular workday was well within his "zone of choice" and will not be disturbed.

The Court also finds that the ALJ was not required to adopt a limitation that the Plaintiff could only stand or walk for less than two hours in an eight-hour workday. This limitation was opined by Dr. Stevens in a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" completed on July 26, 2010. [Tr. 294]. The stand/walk limitation was assessed based on the Plaintiff's chronic lower back pain. [Tr. 295]. The ALJ assigned "no weight" to Dr. Stevens' opinion because it was "wholly inconsistent with the [Plaintiff's] benign clinical examinations and conservative treatment" as well as the rest of the evidence of record. [Tr. 20].

While the regulations provide that a treating physician's opinion regarding the severity of an impairment is normally entitled to controlling weight, the opinion must be well-supported by

17

medically acceptable clinical and laboratory diagnostic techniques and cannot be inconsistent with the other substantial evidence in the case record. 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2). The treating-source rule is not "a procrustean bed, requiring an arbitrary conformity at all times." Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. Apr. 28, 2010) (per curiam).

Dr. Stevens' treatment of the Plaintiff's back mainly consisted of pain management by prescribing hydrocodone and Lortab and the need to lose weight as the Plaintiff's obesity greatly affected the severity of his back pain. Although pain medication did not eliminate the Plaintiff's back pain, it was consistently noted to alleviate the pain to the extent that the Plaintiff experience mild to moderate pain. [Tr. 225, 233, 235, 238, 282, 301]. For example, in August 2008, the Plaintiff reported that he was doing well on Lortab and was able to get though his day. [Tr. 238]. In March 2009, treatment notes stated that while the Plaintiff's back pain was worse in the morning, by mid-afternoon the pain was down to about a 3 or a 4 on a scale of 10 and that the Plaintiff was able to continue working. [Tr. 234]. Similarly in June 2010, treatment notes documented that Lortab kept the Plaintiff's back pain "under fair control." [Tr. 233]. At that time, the Plaintiff was working for a lawn mowing service and was able to mow with only mild impairment. [Id.]. The combination of the Plaintiff's work activities with the lack of objective medical evidence supporting Dr. Stevens' opinion fails to substantiate a more severe walk/stand limitation than opined in the Plaintiff's RFC.

Accordingly, the Court finds that the ALJ was not obligated to incorporate a more severe stand/walk limitation, nor was he required to incorporate the need for extra breaks during a workday. Because substantial evidence supports the ALJ's finding and because he applied the proper legal standards of procedure, the Court will not disturb the ALJ's step five determination.

18

As a result, the Court also finds that the Plaintiff does not satisfy the second prong of the "paragraph C" criteria. Thus, the Plaintiff's allegation of error in this regard is not well-taken.

The Court briefly notes that in the disability determination, the ALJ found that the Plaintiff did not meet the first prong of the "paragraph C" criteria because he "has borderline intellectual functioning rather than mild mental retardation and that he does not meet listing 12.05C as an IQ of 70 or below is not supported by the record." [Tr. 19]. For the same reasons already stated in this opinion, the Court finds that the ALJ's finding regarding the first prong of the "paragraph C" criteria is likewise supported by substantial evidence.


## VI.     CONCLUSION

Therefore, it is hereby **RECOMMENDED**[2] that Plaintiff's Motion for Summary Judgment [Doc. 18] be **DENIED** and the Commissioner's Motion for Summary Judgment [Doc. 20] be **GRANTED**.

Respectfully submitted,

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).